IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEENA M.[1], | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:21cv00039 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Deena M. ("Deena") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Deena alleges that the Administrative Law Judge ("ALJ") erred by finding no severe impairments prior to her date last insured and failing to properly weigh her allegations.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENYING** Deena's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

support the Commissioner's conclusion that Deena failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Deena filed for DIB in June 2018, claiming that her disability began on December 31, 2010, due to depression, anxiety, swelling in hands and feet, asthma, obsessive-compulsive disorder ("OCD") sleep apnea, thyroid issues, and muscle spasms in back. R. 229, 233. Deena's date last insured is December 31, 2016; thus, she must show that her disability began on or

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

before this date and existed for twelve continuous months to receive DIB. R. 11; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Deena's application at the initial and reconsideration levels of administrative review.[4] R. 63–71, 74–83. On June 15, 2020, ALJ Marc Silverman held a hearing to consider Deena's claim for DIB. R. 31–62. Counsel represented Deena at the hearing, which included testimony from vocational expert Katherine Young. On June 24, 2020, the ALJ entered his decision analyzing Deena's claims under the familiar five-step process[5] and denying her claim for benefits. R. 10–19. Pertinent here, the ALJ found no severe impairments; thus, the process stopped at step two. See 20 C. F. R. § 404.1520 (a)(4) (noting that if a claimant is found not disabled at any stage of the five-step sequential process, "we do not go on to the next step").

The ALJ found that Deena was insured at the time of the alleged onset and that she suffered from the medically determinable impairments of adjustment disorder with anxiety, depression, post-traumatic stress disorder ("PTSD"), disorders of the back, obesity, and hypothyroidism as of the date last insured in December 2016.[6] R. 13. However, as stated, the ALJ found Deena did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities for 12 consecutive months, and thus, she had

---

[4] Deena was 49 years old on her date last insured, making her a younger person under the Act. R. 63.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] The ALJ also found that Deena's alleged impairments of attention deficit disorder, OCD, swelling in the feet and hands, and sleep apnea were not medically determinable as of the date last insured. R. 13.

no severe impairments or combination of impairments. Id. Likewise, the ALJ found Deena had only mild limitations in the broad functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 17.

Because the ALJ determined that Deena had no severe impairments prior to her date last insured, he assessed no RFC and determined she was not disabled. 19. Deena appealed the ALJ's decision and the Appeals Council denied her request for review on December 1, 2020. R. 1–3.

## ANALYSIS

Deena alleges that the ALJ's determination that she had no severe impairments prior to her date last insured is not supported by substantial evidence. Deena also alleges that the ALJ failed to properly weigh her allegations.

**A. Medical History Overview**

1. Mental Health Treatment

Deena was diagnosed with anxiety in 2006 and depression in 2001, years prior to her alleged onset date in December 2010.[7] R. 498. During the relevant period, from 2010 to 2016, Deena attended regular counseling with her husband.[8] R. 344–436. However, as the ALJ noted, while there are some references to Deena's depression (R. 401), the counseling records primarily refer to spousal relationship issues, Deena's husband's mental health, and parenting.[9] R. 16. Deena did report mental health issues, including complaints of depression, to her family doctor

---

[7] As Deena focuses her arguments on her alleged mental health impairments, I do the same in this summary.

[8] Deena indicates she also received counseling from November 2010 through March 2012 for "major depression, generalized anxiety disorder, and post-traumatic stress disorder." Pl.'s Br. at 7, Dkt. 15. However, the provider no longer has the treatment notes for this period, as she is only required to keep them for six years. Id.

[9] Indeed, the state agency psychologist was under the impression that the counseling notes were for Deena's husband, as the primary patient. R. 16.

on multiple occasions during this same period, who prescribed medication. R. 469, 475, 477, 487, 489, 498. Deena also had mental health counseling after the date last insured.

2. Medical Opinions

In September 2018 and March 2019, respectively, state agency psychiatrists Andrew Bockner, M.D. and Julie Jennings, Ph.D., reviewed the record and indicated severe mental impairments of depressive, bipolar, and related disorders, anxiety and obsessive-compulsive disorders, and attention deficit/hyperactivity disorders. R. 69, 80. However, the doctors found insufficient evidence to support a substantive determination as of the date last insured, writing:

> While [Deena] was seen regularly for ADHD, affective and anxiety disorders, there is insufficient functional information from the relevant time period to assess. Unfortunately, additional needed evidence from the relevant time period cannot be obtained.

R. 69, 81. The ALJ wrote that he found the impairments to be non-severe, but still found the state agency psychiatrists opinions persuasive "inasmuch as the medical evidence of record does not support a finding that [Deena] had any severe impairments that would cause any significant work-related limitations as of the date last insured." R. 18.

In August 2018, Margaret S. Holland, M.S.W., C.S.A.C, wrote a letter indicating that she saw Deena for mental health therapy, beginning in November 2010, for about 18 months, and then began seeing her again in July 2018. R. 656–57. She noted Deena's "anxiety and depression has always been debilitating and has affected her greatly" including being socially withdrawn, having some panic and anxiety, and having trouble with activities of daily living. R. 656. The ALJ found this opinion not persuasive, noting it was remote in time, and that there was no medical evidence supporting it for the period prior to the date last insured. R. 18.

**B. Finding of No Severe Impairments**

Deena argues that the ALJ's determination that she had no severe impairments prior to

her date last insured in December 2016 is not supported by substantial evidence. In support, Deena points to opinions from her therapist Ms. Holland and the state agency doctors, as well as her failed part-time work attempt in 2014.[10] The Commissioner counters that substantial evidence supports the ALJ's finding that her impairments were not severe prior to her date last insured.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Deena bears the burden of proving that her mental impairments are severe. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating that the claimant bears the burden of showing that he has a "severe" impairment).

When evaluating mental impairments, the Regulations require the ALJ to use a special technique to rate a claimant's degree of limitation in each of the functional areas based on the extent to which a plaintiff's impairment "interferes with the [] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The four functional areas include: (1) understanding,

---

[10] Deena also mentions an initial psychiatric evaluation by Jeffrey B. Luckett, Ph.D. in June 2007. R. 336–42. Dr. Luckett indicated that his evaluation was "suggestive" of diagnoses including bipolar II disorder, post-traumatic stress disorder, generalized anxiety disorder, and rule out borderline personality disorder. R. 341. However, Deena does not make any specific arguments regarding this evaluation, which occurred several years prior to Deena's alleged onset date, when Deena was still working full-time as an elementary school teacher.

remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b), § 12.04(B). A rating of "none" or "mild" generally calls for a conclusion that the impairments are not severe unless the evidence indicates more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § § 404.1520a(d)(1), 416.920a(d)(l). If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, a finding of not disabled is made at step two, and the sequential process comes to an end. On the other hand, if the claimant has at least one impairment that is deemed severe, the process moves on to the third step.

Here, the ALJ found that Deena's medically determinable mental impairments of adjustment disorder with anxiety, depression, and PTSD, considered singly or in combination, do not significantly limit her ability to perform basic work activities for 12 consecutive months, and are therefore non-severe. R. 13. The ALJ found a mild limitation in all four functional areas. Overall, because Deena's medically determinable mental impairments caused no more than mild limitation in any of the functional areas and the evidence does not otherwise indicate a more than minimal limitation in Deena's ability to do basic work activities, the ALJ found her mental impairments non-severe. R. 17; 20 C.F.R. § § 404.1520a(d)(1), 416.920a(d)(l).

Deena also argues that the ALJ's decision to discount Ms. Holland's August 2018 opinion finding work-preclusive limitations was not supported by substantial evidence, including because the state agency doctors found that her affective disorder, anxiety, and attention disorders were severe. Deena asserts that the ALJ inaccurately summarized the opinions of the

7

state agency doctors.[11] She writes that these doctors "actually stated that they found [she] had severe psychiatric impairments but that there was insufficient evidence to provide [her] RFC during the relevant period." Pl.'s Br. at 23, Dkt. 15. However, the ALJ did not misstate these findings, including writing that, while he found the impairments are non-severe, the opinions of the state agency doctors are *still* "persuasive inasmuch as the medical evidence of record does not support a finding that [Deena] had any severe impairments that would cause any significant work-related limitations as of the date last insured." R. 18. The ALJ understood that the state agency doctors found severe impairments, but still found them persuasive to the extent that the doctors concluded insufficient information existed in the record to assess functional limitations,

On balance, the ALJ's determination that Deena did not have a severe mental impairment is supported by substantial evidence. The ALJ adequately explained why he discounted Ms. Holland's opinion. Under the regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources.[12] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision.[13] Id. Here, the ALJ

---

[11] Deena writes that the state agency psychologists were Dr. Koch and Dr. Jennings. However, it appears from the records cited (R. 69, 81), that the actual state agency psychiatrists were Dr. Bockner, and Dr. Jennings, while Dr. Koch was not a psychiatrist, but a medical doctor. R. 79.

[12] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

[13] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

accurately noted that Ms. Holland's form was completed over three years past the date last insured and is not persuasive both because it is so remote in time and is not supported by the medical evidence during the relevant period. R. 18. The opinion sufficiently explains the ALJ's consideration of the available medical evidence. The record shows that Deena reported mental health issues to her family doctor during the relevant period, including periodically complaining of depression and anxiety.[14] While the ALJ did not specifically reference each of Deena's complaints to her primary care doctor during the relevant period, he did acknowledge her diagnoses of depression and anxiety, as well as her prescriptions for psychotropic medications. R. 16. The ALJ wrote that Deena:

> first began taking mood stabilizers in approximately 2002, and she was able to work at substantial gainful activity levels for much of that time. There is no evidence that her mental health impairments became more severe after the alleged onset date.

R. 16. As noted by the ALJ, Deena also denied depression and anxiety at multiple appointments during this time period. R. 16. Thus, while the ALJ acknowledged that records from her family doctor during the relevant period showed she had been diagnosed with depression, and that she had reported anxiety as well as symptoms including difficulty focusing, the ALJ emphasized that at other appointments she reported feeling happy and denied depression and anxiety. R. 16.

Indeed, as the Commissioner points out, Deena's mental status examinations through the date last insured were unremarkable, including normal mood and affect, no thought or memory difficulty, and intact judgment and insight. D.'s Br. at 9, Dkt. 18. Importantly, the ALJ found that, relevant to the four broad functional areas, Deena had mild limitations, explaining that she

---

[14] For example, in November 2013 (reporting "worsening depression"), December 2013 (indicating "depression not controlled well"), April 2015 (reporting increased anxiety and that her "mood is not controlled"), July 2015 (noting deteriorating depression, improving anxiety), and June 2016 (reporting depression "not bad but not at baseline"). R.469, 475, 477, 487, 489, 498.

9

could drive, help her son with homework, attend a twelve-step program online, parent a son with special needs, and be generally independent with activities of daily living.[15] R. 17.

The ALJ's determination that Deena's mental impairments do not cause more than a minimal limitation on her ability to work and are non-severe has substantial support in the record, including in Deena's treatment records showing, mostly mild mental health symptoms, with no inpatient hospitalizations, an ability to continue to perform her activities of daily living, and the state agency doctors' opinions finding no functional limitations. See Henry v. Berryhill, No. 2:16-CV-3884-PMD-MGB, 2018 WL 1319015, at *7 (D.S.C. Jan. 19, 2018), report and recommendation adopted, No. 2:16-CV-3884-PMD-MGB, 2018 WL 1305716 (D.S.C. Mar. 13, 2018) (finding that depression that is responsive to treatment and causes no more than minimal vocationally relevant limitations is not a severe impairment) (collecting cases); see also 20 C.F.R. § § 404.1520a(d)(1) (stating that a rating of "none" or "mild" generally calls for a conclusion that the impairments are not severe unless the evidence indicates more than a minimal limitation in the claimant's ability to do basic work activities).

Finally, regarding Deena's complaint that the ALJ "did not specifically address" the letter from Deena's husband's to her counsel dated May 2019, discussing Deena's work attempt with his company, the ALJ clearly acknowledged the work attempt, (R. 14), and is not required to specifically address the letter, or give any specific weight to the opinions of Deena's husband. While the ALJ has a duty to explain his decision, discussing the evidence and his conclusions, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

---

[15] As the Commissioner points out, the vocational expert also testified that jobs existed for a person of Deena's vocational background and an RFC of medium work with certain limitations including performing simple, routine tasks, making simple work-related decision, and low stress work, defined as routine work with no more than occasional changes. R. 59. However, because the ALJ stopped at step 2, he did not assess an RFC.

Here, the ALJ adequately explained how he found the opinions persuasive, or not persuasive, and appropriately incorporated the opinions to the extent they were supportive and consistent with the overall record. To this end, when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the Court defers to the ALJ's decision. Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020).

### C. Subjective Allegations

Deena argues that the ALJ's assessment of her allegations is not supported by substantial evidence and that the ALJ failed to explain how Deena's variety of daily activities support his conclusion that she can work full-time. Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[16] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and

---

[16] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

11

other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of Deena's medical history and her treatment, as well as her own allegations, and the ALJ adequately explained his finding that Deena's allegations were not entirely consistent with the medical evidence and other evidence in the record. Deena points to Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251 (2017), Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020), and Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018), to support her argument that the "activities referenced by the ALJ are not performed on a sustained basis commiserate with substantial gainful work activity [but instead] are either performed intermittently and at [Deena's] own pace or with assistance from her husband." Pl.'s Br. at 15. Unlike in these cases, however, the ALJ did not overstate Deena's activities or ignore her testimony, acknowledging that in her function report from December 2018 Deena wrote she "normally stays home and is often in bed," and can perform other activities including preparing simple meals, driving, and watching television, but gets help with household chores, and finances. R. 14. Indeed, the ALJ even acknowledges that an "argument could be made that [Deena] is currently disabled based upon her current impairments. However, the medical evidence of records simply does not support a finding that these impairments were severe before the date last insured [in December 2016]." R. 15. Further, the ALJ pointed to more than Deena's daily activities to discount her allegations, including the objective medical evidence. The ALJ wrote, "As for [Deena's] statements about the intensity, persistence, and limiting effects of her symptoms, they may or may not be consistent with her current impairments and treatment, but [Deena] has failed to establish that they are supported by the medical evidence pertaining to the period before December 31, 2016." R. 18. In support, the ALJ

12

emphasized that Deena's "physical impairments – including asthma, hypothyroidism, and back pain – appeared to be generally under control through medication management and occasional visits to her family physician. [Deena] had no surgical procedures or hospitalizations but only conservative treatment." R. 18–19. Regarding her mental health impairments, the ALJ wrote:

> [Deena's] treatment was also conservative and routine. She had no mental health hospitalizations, and only sporadic outpatient treatment, most of which pertained to her husband and/or children. She did take psychotropic medication prescribed by her primary care physician, and her mental status examinations and self-reporting reflected mostly mild mental health symptoms.

R. 19. This is the ALJ's job, to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Deena's subjective complaints with substantial evidence.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication

of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

    Entered: June 1, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge